HAMITER, Justice.
 

 Bologna Bros, and the individual members. of that partnership are suing the widow and the sole heir of Benjamin J. Stephens deceased for the return of the price of $1,500 paid by plaintiffs to decedent in the purchasing of a parcel of ground, and also for the recovery of certain taxes amounting to $855.49 paid thereon by them, they contending that the deceased vendor and recipient of the purchase price had no title to the property which he undertook to convey.
 

 The district court rendered judgment in favor of plaintiffs for $1,500; but it rejected their demands for taxes. Defendants are appealing.
 

 On November 19, 1919, Benjamin J. Stephens acquired from Lewis Gottlieb, by a good and valid title, Lots 21, 22 and 23, of Square 1, Bonnecaze Subdivision, in the City of Baton Rouge.
 

 Sometime later there was organized the Stephens Realty Company, Inc., of which the said Stephens owned 198 shares of its 200 shares of stock, and his wife and daughter, defendants herein, each owned one of the two remaining shares.
 

 
 *115
 
 In favor of that corporation, which was clearly a family affair and had no bank account, Stephens executed a deed on September 28, 1931, reciting the conveyance to it of Lots 21, 22 and 23 of the Bonnecaze Subdivision in the City of Baton Rouge. No square number was listed or shown in the description of the property conveyed, notwithstanding that the Bonnecaze Subdivision consists of two squares, known as Square No. 1 and Square No. 2, in each of which there are Lots 21, 22 and 23; neither was reference made to the deed by which Stephens had acquired title from Gottlieb.
 

 On September 13, 1935, Benjamin J. Stephens, in his own name, transferred to the plaintiff partnership of Bologna Bros., for a cash consideration of $1,500, the south 37' of Lot 21 of Square No. 1, of the Bonnecaze Subdivision; and on this parcel of ground the purchaser, at a lafer date, erected a building at a cost of approximately $10,000. The deed evidencing the transaction correctly described the property intended to be purchased, it reciting the square number and also referred to the instrument by which Stephens acquired from Gottlieb. And the mentioned consideration of $1,500 is the purchase price sought to be recovered in this suit.
 

 In July, 1941, subsequent to the death of Benjamin J. Stephens and after his wife and daughter (defendants herein) had been sent into possession of his estate, the Stephens Realty Company, Inc., represented by decedent’s wife as its president and for’ a consideration of $4,000, executed a deed conveying to Cecil N. Bankston two parcels of -ground. One of these parcels was the south
 
 3T
 
 of Lot 21 of Square 1. of the Bonnecaze Subdivision, the same property which had been sold by Benjamin J. Stephen to Bologna Bros, on September 13, 1935.
 

 Following this conveyance Bankston informed Bologna Bros, that he owned the land upon which its building was constructed; and after some negotiations, but without any notice to defendants, he received from that partnership the sum of $1,000 for a deed to the property.
 

 Later this suit was commenced, plaintiffs taking the position in it, to quote from the brief of their counsel, “that at the time that Benjamin J. Stephens purported to sell to plaintiffs he did not own the property, but Stephens Realty Company, Inc., owned it; that the sale from Benjamin J. Stephens to Bologna Bros, was therefore void, and that Stephens’ heirs must return the purchase price.”
 

 Defendants, on the other hand, are urging, 1 — that plaintiffs have never been evicted and therefore cannot sue for the return of the purchase price; 2 — that in as much as no square number was given in the transfer from Benjamin J. Stephens to the Stephens Realty Company, Inc., the property remained in Stephens, and the sale by him to Bologna Bros, was good and valid; and 3 — that if the partnership had waited for the filing of suit against it by Banks-ton, and therein defendants had been called in warranty, the defense could have been made that he (Bankston) obtained no title to the property, that he had been guilty of fraud, and that error was made in the transfer of the property to him.
 

 
 *117
 
 In Bonvillain v. Bodenheimer, 117 La. 793, 42 So. 273 (a case cited and relied on by appellees), plaintiff sued to recover the price that he paid to defendant for property which the latter had never owned, and this court, on rehearing, held that he was entitled to restitution of the money, even though he may not have been actually evicted or disturbed in his possession by the true owner. Our conclusion was founded on R.C.C. Article 2452, which declares that the sale of a thing belonging to another person is null, and also on the rule announced in Robbins v. Martin, 43 La. Ann. 488, 9 So. 108, and McDonold & Coon v. Vaughan, 14 La.Ann. 716, to the effect that actual eviction is unnecessary “if a perfect title exists in some third person, whereby it is rendered legally certain that his vendor had no title.”
 

 Such doctrine or rule was later recognized and approved in Kuhn v. Breard, 151 La. 546, 92 So. 52, in Bickham v. Kelly, 162 La. 421, 110 So. 637, and in Abney v. Levy, 169 La. 159, 124 So. 766, 767.
 

 Moreover, in the Abney case, which was also a suit for the return of the purchase price, it was said:
 

 “It is a matter of no importance that, in this case, the third person, in whom it is alleged title is vested, is not a party to this suit.. He is not a necessary party to it. The court, even in his absence, may inquire to ascertain whether it appears that a perfect title is vested in him. For the court to be legally in position to do this it is not necessary that the third person to the sale be bound by the decree. The only necessary parties to the suit are the parties to the sale, the plaintiff, and the defendant herein. The third person is not concerned as to whether defendant be ordered to return the purchase price to plaintiff or not.”
 

 The discussed principles of law, it will be noticed, are applicable only when a perfect title exists in some third person, •thus showing with legal certainty that there is none in the vendor of him who claims the restitution. And from this the question arises: Did Bankston, who has not been made a party to this suit, have a perfect title to the disputed
 
 37'
 
 of gróund?
 

 “The purpose of registry is that third persons may have notice of the transfer, and, if the description in the deed is so vague, indefinite, and uncertain that the property cannot be located and identified, the sale is void as to third persons who deal upon the faith of the public records.” This was a comment in Hargrove v. Hodge et al., 9 La.App. 434, 121 So. 224, 225, a case decided by the Court of Appeal, Second Circuit. And therein the court further observed:
 

 “The description in a deed must be such that the property intended to be conveyed can be located and identified, and the general rule is that the description must fully appear within the four corners of the instrument itself, or that the deed should refer to some map, plat, or deed as a part of the description, so that the same may be clear.”
 

 A writ of certiorari was refused by this court in the Hargrove case. Furthermore, in two recent decisions we specifically affirmed its holding. Daigle v. Calcasieu
 
 *119
 
 Nat. Bank in Lake Charles, 200 La. 1006, 9 So.2d 394; Cupples v. Harris, 202 La. 336, 11 So.2d 609.
 

 Applying the test of the Hargrove case to Bankston’s title, and keeping in mind that Bologna Bros, (a third person) dealt on the faith of the public records, we can not conclude with certainty that .it is perfect. To say the least, it is possibly defective. True the deed by which he acquired from Stephens Realty Company Inc., accurately and correctly described the property; but as to the instrument executed by Benjamin-J. Stephens in favor of that corporation, which is a link in Bankston’s chain of title, some doubt exists as to the sufficiency of the description, this because of its failure to give the number of the square in which the parcel of ground was situated.
 

 Since we are unable to hold that Bankston’s title -on its face is perfect, it becomes necessary to and we will remand the case so thht plaintiffs can make him a party to the suit; and in this connection the present litigants are granted the privilege of filing supplementary pleadings and of introducing any additional admissible evidence that may be material to the litigation. If we should adjudicate on the title of Bankston while he is not a party hereto and hold it to be invalid, certainly he would not be bound by the decree. Then, too, such would be unfair to him. Furthermore, if that be done, most probably he would bring an action for restitution against these defendants; also these plaintiffs would sue for a return of the $1,000* which they paid him. By making Bankston a party to the proceeding, the controversy will be simplified and a multiplicity of suits, avoided. This is in keeping with the adage that the law abhors a multiplicity of suits.
 

 No exception of non-joinder was filed; however, the court of its own motion-may take cognizance of the lack of necessary parties. Succession of Todd, 165 La. 453, 115 So. 653; De Hart v. Continental Land & Fur Co., 196 La. 701, 200 So. 9.
 

 For the reasons assigned the judgment of the district court is reversed and set aside, and the case is remanded for further proceedings consistent with the views herein expressed and in accordance with law. Costs of the appeal shall be paid by plaintiffs; all others are to await the final determination of the case.
 

 O’NIELL, C. J., does not take part.